UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF GEORGIA

---

DAVIS M ETKIN
1567 Wendell Ave
Schenectady New York 12308

                    Plaintiff

        -against-

KENNETH L. HILL, M.D.
61Whicther Street Suite 130, Marietta, GA  30060

STEVEN J SCHWARTZ, M.D.
677 Church Street Emergency Dept., Marietta, GA  30060

JINUE P KAMDAR, M.D.
55 Whitcher Street, Suite 130, Marietta GA  30060

WELLSTAR
677 Church Street, Marietta GA  30060

MICHAEL K RAY JR., M.D.
677 Church Street Emergency Dept.. Marietta GA  30060

JOSEPH T HORNES, M.D.
677 Church Street, Kennestone Hospital, Marietta, GA  30060

KENNESTONE HOSPITAL, INC.
677 Church Street, Marietta, GA  30060

                    Defendants

---

**CAP**

**COMPLAINT**
PLAINTIFF DEMANDS
TRIAL BY JURY

1 14 CV - 0673

FILED IN CLERK'S OFFICE
U.S.D.C.  Atlanta

MAR - 7 2014

JAMES N. HATTEN, Clerk
By:
        Deputy Clerk

---

        Davis M. Etkin, *Pro se*, hereby files this claim against the Defendants, Dr.

Kenneth L. Hill, Dr. Steven Swartz, Dr. Jinue P. Kamdar, Dr. Michael K. Kay, Dr

Joseph T. Hornes, Kenneston Hospital Inc., Wellstar and in support there of

states as follows:

## STATEMENT

        There is no other civil action between the parties arising out of the same

transactions or occurrences as alleged in this complaint pending in this court, nor

has any action been previously filed and dismissed or transferred after been assigned by a judge.

## JURISDICTION

Jurisdiction of the Court arises under 28USC Sec. 1332 which gives the District Courts original jurisdiction over civil actions arising under the constitution. The Plaintiff is a citizen and resident of N.Y. and the Defendants live and work in GA. The amount in controversy exceeds the sum specified by 28USC 1332.

## VENUE

Venue arises under 28USC Sec. 1391 where all of the defendants are in the district where the action is brought.

## FACTS

1. The Plaintiff lives at 1567 Wendell Avenue, Schenectady, New York and has been a resident of the State of New York his whole life with the telephone number 518-372-6141.

2. Dr. Kenneth L Hill, Dr. Steven Swartz, Dr. Jinue P. Kamdar, Dr. Michael Kay, Dr. Joseph T. Hornes, are physicians licensed to practice medicine in the State of Georgia and regularly engage in the practice of medicine in Atlanta Georgia. The Doctors are either associated with or employed by Kennestone Hospital.

3. Kennestone Hospital is a corporation in Atlanta Georgia that leases Wellstone Kennestone Hospital from the COBB County, Kennestone Hospital Authority.

4. Wellstar currently operates five (5) hospitals each of which is leased to Wellstar by their respective hospital authority.

5. The amount of the claim exceeds the jurisdiction limit of the DISTRICT COURT OF GEORGIA and the appropriate venue for the claim is Atlanta Georgia as the defendants maintain their principal place in Atlanta Georgia and as the incident of medical malpractice occurred in Atlanta Georgia.

6. That on March 23, 2012, the Plaintiff was visiting his son and daughter-in-law in Atlanta Georgia when he descended down a flight of stairs at their home. Before he got to the bottom two or three stairs he fell, flying across a hallway and landed on his head.

7. Within a short period of time after Plaintiff fell he went to the emergency room at Kennestone Hospital, where he was admitted as a patient. He was diagnosed as having a subdural Hematoma which is a collection of blood between the brain and its tough outer covering membrane (dura). This is caused by bleeding from a ruptured blood vessel and is subdural bleeding that develops shortly after a blow to the head.

8. Upon admission at Kennestone Hospital, the plaintiff listed his prescription medication which included plavix that is a blood thinner which increase the flow of blood.

9. The Plaintiff was treated with medication while the blood kept building up in his head. The Kenneston Hospital record indicated that "the plaintiff's mental status significantly decreased to the point that he had what appeared to be a receptive and expressive aphasis". The Plaintiff became agitated and as the blood built up on the left side of his head he became confused and lost his speech and memory. The Plaintiff developed aphasis and he was told by Defendants that medication would eliminate the flow of blood. The expected results that

Defendants thought would occur never happened. In fact, just the opposite took place and the Plaintiff's condition kept deteriorating.

10. After 6 days in Kennestone Hospital, the Defendants, knowing or should have known, that the blood on Plaintiff's brain did not decrease but still discharged him in serious condition with Aphasis and all of the symptoms that go along with such condition.

11. During the Plaintiff's stay in the hospital the Defendants particularly Defendant Dr. Kamadar, assured the Plaintiff that medication would dissolve the blood in his head.

12. The next two days after Plaintiffs discharge from the Kennestone Hospital, he remained in a state of aphasis, confused and with extreme headaches. He was in such a state that he went back to Kennenstone Hospital Emergency room. He was examined and while his condition did not change he was discharged and told to see his primary care physician. He was ok to fly home.

13. The morning of the flight home, Plaintiff was unable to dress himself, had wheel chair help getting on the plane and has no recognition of the flight. This put Plaintiff in great jeopardy of a blood clot due to the air pressure.

14. On April 3, 2012 the Plaintiff's condition had deteriorated to such an extent, that his wife brought him to St Peters Hospital, Albany New York where he was admitted.

15. The attending physician and surgeon was Dr Thomas McCormack. In assessing Plaintiff's condition he appears to be deteriorating and his concern was that that the subdural was getting ever so slightly larger as it evolves from acute to subsute. He said he would plan for surgery in the next 24to 48 Hrs. The Plaintiff had significant expressive dysphasia and the following of commands

certainly fluctuates.  The CT scan of the head was done at St. Peters which demonstrated a 1.3 to 1.4 area of high density among the left parietal convexity consistent with a subacue subdural Hematoma. There was localized mass effect with effacement of the suical gyral pattern as well as a mild mass along the midline.  Dr. McCormack asked four consulting doctors to render their opinion.

16. There were four consulting doctors each with the same opinion. Dr. Christopher S. Calder said that the Plaintiff has a word salad aphasis. He cannot name. He cannot repeat. He called my tie a "you catch it". When the Doctor asked him where he was he said "I can't mit you can get me".  He does not follow commands. "His family says he is getting worse day by day.  Plaintiff has an acute to subacute left parietal subdural hematoma with underling diffuse cerebral edema, that likely accounts for the aphasia.  The experience of trauma has resulted in post-traumatic stress disorder.  It has caused neurological changes. It caused a problem with Plaintiff expressing his thoughts because the peripheral lobe is responsible for language and is affected by trauma.  Also affected is short term memory loss.

17. On April 5, 2012, the plaintiff was operated on by Dr. McCormack.  He would do a small parietal bone flap evacuate the subdural and place a drain.  The surgery was a success and the Plaintiff was discharged on April 19, 2012.   Dr. McCormack saved Plaintiff's life.

18. Upon being discharged from St. Peter's Hospital the Plaintiff was taken by ambulance to Sunnyview Rehabilitation Hospital where he was admitted on April 10, 2012.   All of the personal skills that Plaintiff lost while a patient at

Kennenstone Hospital were to be treated.   Plaintiff was unable to put many words together after losing his speech.   His memory needed restarting and his math skill needed coaching.   The skilled personnel at Sunnyview Hospital helped Plaintiff with his balance and other related activities.   Plaintiff was discharged on April 12, 2012 and was sent home with homework related to his injuries.

### LEGAL ELEMENTS OF MEDICAL MALPRACTICE COMPLAINT

The Plaintiff meets all of the legal elements for Medical Malpractice.

19. (a)   The EXISTANCE OF A LEGAL DUTY :

Once a professional relationship is established between Plaintiff and the Defendant's, the Defendants have a legal duty of reasonable professional care to Plaintiff.   The Defendants provided medical services to the Plaintiff at Kennestone Hospital establishing a medical relationship.

(b)   THE CONCEPT OF STANDARD CARE

(BREACH OF PROFESSION DUTY OCCURRED)

The Defendants during their treatment of the Plaintiff owed him a duty of acceptable standard of medical care within the medical community.   The Plaintiff was diagnosed with subdural hematoma. The attending physician was Dr. Kamdar and consulting doctors were Dr. Hill and Dr. Hormes.   All Defendants from their medical report acknowledged that the patient (Plaintiff) had a waxing and waining of his mental status early in his hospital stay.   The next day his mental status significantly decreased to the point that he had what appeared to be a receptive and expressive aphasis. The Plaintiff was treated with Keppta, other medication.

As part of the Kennestone medical record which is labeled as (confidential medical record) there is an analysis and definition of a subdural hematoma

and its treatment it states: "that a subdural hematoma is a collection of blood between the brain and its tough outer covering membrane (dura)". This is caused by bleeding (hemorrhage) from a ruptured blood vessel. Acute subdural hemorrhage.    This is subdural bleeding that develops shortly after a serious blow to the head. If not diagnosed and promptly severe brain injury or death may occur. In many cases emergency surgery must be performed.  The blood clot must be removed.   The report covers many details both in cause and treatment.

The Plaintiff during his hospital stay at Kenneston, continued to be treated with medication. The Plaintiff developed aphasis.   He lost his speech and memory on occasion and had difficulty understanding where he was.   Meanwhile, the blood was building up under Plaintiff's brain and there was never an attempt to remove it. In fact, there is nothing in the medical reports that concerns itself with the blood built up.  When the defendants took a history from Plaintiff, upon his admission to the Hospital, one of the prescription medications that Plaintiff had been taking was Plavix, a drug that increases the flow of blood and Defendants should have been aware that the blood would build up under Plaintiff's skull.  This did not seem to concern the Defendants who kept telling Plaintiff that the blood would dissipate.  Just the opposite was taking place and the Plaintiffs condition kept getting worse and the treatment remained the same.

On March 29th the Plaintiff was discharged from Kennestone Hospital and the final report signed by Dr. Jinue Kamdar described Plaintiffs condition as subdural hematoma causing aphasis. Discharging Plaintiff with the blood under his skull and brain was nothing short of gross negligence. The

treatment offered by Defendants did not meet the standard of acceptable care.   If the Defendants followed the acceptable standard of medical treatment and performed a simple procedure to remove the blood from Plaintiff's brain he would not have needed the extensive surgery at St Peters Hospital.

On April 1, 2012, when Plaintiff went to the Kennestone Hospital emergency room he wanted treatment for aphasis and other distressful symptoms. Dr. Kay, after reviewing Plaintiff's medical history told him that it was ok for him to fly home and that if he found he needed treatment he should "see his family doctor ". There was no concern about the blood built up on Plaintiff's brain, his aphasis or his distressing condition. Dr. Kay told Plaintiff that if his medical tests require follow up medical treatment, he would contact Plaintiff of course the follow up never.   It was obvious that the Defendants main concern was to get Plaintiff out of their jurisdiction as soon as possible. Plaintiff never heard from Defendants again.

When Plaintiff arrived at St Peters Hospital on April 2, 2012 it was obvious that the defendants left the Plaintiff in dire condition. Such that the Attending physician   asked Plaintiff's wife if her husband had his affairs in order.   Dr. McCormick the realizing the very seriousness of Plaintiffs condition , he decided to operate within 24 to 48 hrs  It was only because of the skill of the surgeon that the Plaintiff survived  The Defendant's by their lack of proper care and treatment of  the Plaintiff did not meet the necessary standard of care.

20.   That as a direct and proximate results of the breach of  applicable standard of medical care by Defendant's resulted in: (all prior to admission at St Peters Hospital)

(a) Plaintiff's immune system has been compromised causing determental reactions to Plaintiff's body. He gets frequent headaches requiring prescription medication. Plaintiff had not had a headache in over twenty years, prior to his treatment at Kennestone. This disability causes Plaintiff 'extreme pain and suffering and will exist into the future. He is always tired which limits as what he is able to do.

(b) The shingles are caused by varicella-zoster. Plaintiff had chicken pox when he was ten years old and the virus was quietly hiding out in the roots of his nerves. The laten or "quite" infection can become active again even many years after the Plaintiff had chickenpox. This is when Plaintiff's immune system had not been working properly. The break down in Plaintiff's immune system was caused by Defendant's not meeting the medical acceptable standard of care. The Plaintiff developed the shingles in January of 2013 and still is suffering from the illness in and will continue to suffer in the future. The pain from the sores that are created are almost unbearable. There is a constant burning sensation. Plaintiff is left with POSTHERPETIC NEURALGIA where under the skin his nerves have been attacked. The problem with the shingles and postherpetic neuralgia, there is no known treatment or cure. The Plaintiff is left to tolerate the illness as best as possible and his daily activities are limited. The stress caused by asphasia leading to the loss of speech, memory and other functions contributed to shingles and postherpetic neuralgia.

(c) SPEECH: The Plaintiff at the present tine is unable to put certain words together and while his stay at Sunnyview Hospital improved Plaintiff's

speech he still has difficulty.   This condition   at times embarrassing and may be permanent.

(d) Plaintiff's memory is still affected.  On many occasions he has to ask for help to recall things that he always took for granted.  Every day common things that every person comes in contact with become a burden.  This condition exists at the present and may be permanent.

(e)   Plaintiff's sleep has been affected, a condition he did not have prior to being treated by Defendant's at Kennestone Hospital.

(f) The Plaintiff had to endure extensive surgery at St. Peters Hospital when a simple procedure to remove the blood from Plaintiff's brain by Defendant's using acceptable standard of medical care.  Any disabilities that the Plaintiff suffered as a result of the surgery at St Peters Hospital were the Defendant's failure to use the acceptable medical standards of care.

(g) That all of the injuries and damages sustained by the Plaintiff were the direct and proximate results of the negligent on the part of Defendants without any act or omission on the part of the Plaintiff directly thereunto contributing.

(g) Plaintiff's treatment by Defendants caused him extreme pain and suffering.

21. All of the Defendant Doctors and Hospitals:

(a)  Dr. Jinue Kamdare – Attending physician

(b) Dr. Kenneth Hill – Consulting physician

(c) Dr. Joseph T. Hornes – Consulting physician

(d) Dr. Michael K. Ray, Jr. – Attending and admitting physician

(e) Dr. Steven J. Schwartz – Requesting physician

(f) Kennestone and Wellstar Hospital – Consulting Hospitals were involved in the care and treatment of the Plaintiff. The Defendants did not use the acceptable standard of care within the medical community in treating the Plaintiff.

WHEREFORE, The Plaintiff claims damages in an amount in excess of one million dollars ($1,000,000.00) against the Defendants individually and collectively and leaves the final amount to be determined at trial plus interest and costs and for further relief that this Honorable Court determines necessary and appropriate including punitive damages.

Dated: February 21, 2014

Davish Etkin

Davis Etkin, Pro se Plaintiff
1567 Wendell Avenue
Schenectady, New York 12308
(518) 372-6141
davisetkin @ Aol. Com

AFFIDAVBIT OF MERIT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

State of New York

County of Schenectady

1. The Plaintiff,Davis M Etkiin , being duly sworn ,deposes and says that

    He makes this affidavit of merit based upon the facts within his knowledge

2. The medical information in the complaint comes from the records at Kennestone Hospital

    And sets forth the diagnosis and treatment rendered by the defendants and is a true

    And accurate copy of those records .The records are listed as exhiobit(a) and best describe

    The Plaintiff's condition

3. Exhibit (b) is taken from the Hospital records at St.Peters Hospital and is a true and accurate

    Copy of those records and best describes Plaintiff's condition and treatment by Plaintiff's doctors

4. That the information given by the Plaintiff with regard to his injuries, pain and suffering ,is

    A true and accurate account of the statements made in the complaint

5. Plaintiff is bringing this action in good faith and feels that he has a meritorious

    Case.

6. The medical records in Exhibit (a) and (b) are taken out of the entire medical records form

    Both Kennestone Hospital and St Peters Hospital and the entire records will be made available

    To Defendant's

DATED FEB 27 2014

Sworn to before me this date

Of Feb 27,2014

Stacy Bidwell (Leger)

STACY R. BIDWELL
Notary Public, State of New York
Qualified in Schenectady County
No. 01BI6238303
Commission Expires April 04, 20